O

# United States District Court
# Central District of California

| | |
|---|---|
| SG BLOCKS, INC., | Lead Case №:<br>    2:20-cv-03432-ODW (RAOx) |
| Plaintiff, | Consolidated Case №:<br>    2:20-cv-04386-ODW (RAOx) |
| v. | |
| HOLA COMMUNITY PARTNERS;<br>HEART OF LOS ANGELES YOUTH,<br>INC.; and CITY OF LOS ANGELES, | **ORDER RE:** |
| Defendants. | **(1) HOLA'S MOTION TO<br>    DISMISS COMPLAINT [27];**<br>**(2) CITY'S MOTION FOR<br>    JUDGMENT ON THE<br>    PLEADINGS [32]; AND** |
| HOLA COMMUNITY PARTNERS, | **(3) SG BLOCKS'S MOTION TO<br>    DISMISS FIRST AMENDED<br>    CONSOLIDATED COMPLAINT<br>    [35]** |
| Consolidated Plaintiff, | |
| v. | |
| SG BLOCKS, INC.; TETON<br>BUILDINGS, LLC; AVESI<br>CONSTRUCTION, LLC; AMERICAN<br>HOME BUILDING AND MASONRY<br>CORP DBA AMERICAN HOME<br>BUILDING; and DOES 1-1000, inclusive, | |
| Consolidated Defendants. | |
| AND RELATED THIRD-PARTY<br>CLAIMS | |

# I.   INTRODUCTION

On April 13, 2020, Plaintiff SG Blocks, Inc. ("SG Blocks") filed a Complaint against Defendants HOLA Community Partners ("HCP"), Heart of Los Angeles Youth, Inc. ("HY"), and the City of Los Angeles ("City") in *SG Blocks, Inc. v. HOLA Community Partners, et al.*, case no. 2:20-cv-03432-ODW (RAOx) (the "Lead Case"). (*See* Compl., ECF No. 1.)[1]   On April 20, 2020, HCP filed its own action against SG Blocks in the Los Angeles Superior Court, which SG Blocks removed to this Court on the basis of diversity jurisdiction on May 14, 2020.  *HOLA Community Partners v. SG Blocks, Inc., et al.*, case no. 2:20-cv-04386-ODW (RAOx) (the "Consolidated Case"). On July 24, 2020, the Court consolidated the two actions.  (Order Consolidating Cases, ECF No. 26.)  On August 19, 2020, Consolidated Plaintiff HCP filed a First Amended Consolidated Complaint against Consolidated Defendant SG Blocks.  (First Am. Consol. Compl. ("FACC"), ECF No. 31.)  And on January 22, 2021, SG Blocks filed a Third-Party Complaint against Third-Party Defendants Teton Buildings, LLC, Avesi Construction, LLC, and American Home Building and Masonry Corp ("AHB").  (Third Party Compl., ECF No. 49.)[2]

Now, three motions are pending before the Court.  First, Defendants HCP and HY (collectively referred to in the singular as "HOLA") move to dismiss the claims against them in the Lead Case.  (HOLA Mot. Dismiss ("HOLA Mot."), ECF No. 27.) HOLA's Motion is fully briefed.  (*See id.*; Opp'n HOLA Mot., ECF No. 34; Reply HOLA Mot., ECF No. 38.)  Second, Defendant City moves for judgment on the pleadings with respect to SG Blocks's seventh cause of action, which is the only claim asserted against the City in the Lead Case.[3]  (City Mot. J. Pleadings ("City Mot."), ECF No. 32.)   The City's Motion is also fully briefed.  (*See id.*; Opp'n City Mot., ECF

---

[1] Unless otherwise noted, citations to Electronic Case Filing numbers refer to Lead Case docket.
[2] Originally, HCP brought the Consolidated Case against SG Blocks, Teton, Avesi, and AHB. However, HCP has since dismissed its claims against Teton, Avesi, and AHB.  Thus, the only claims remaining against Teton, Avesi, and AHB are asserted in SG Blocks's Third-Party Complaint.
[3] Rather than moving to dismiss, City filed an Answer to the Complaint on August 12, 2020.  (City Answer, ECF No. 28.)

No. 33; Reply City Mot., ECF No. 37.)   Third, Consolidated Defendant SG Blocks moves to dismiss the First Amended Consolidated Complaint.  (SGB Mot. Dismiss FACC ("SGB Mot."), ECF No. 35.)  SG Blocks's Motion is fully briefed as well.  (*See id.*; Opp'n SGB Mot., ECF No. 40; Reply SGB Mot., ECF No. 41.)

For the following reasons, (1) HOLA's Motion (ECF No. 27) is **GRANTED in part** and **DENIED in part**; (2) the City's Motion (ECF No. 32) is **GRANTED**; and (3) SG Blocks's Motion (ECF No. 35) is **DENIED**.[4]

## II.   BACKGROUND

The HOLA entities (HCP and HY) are non-profit organizations that work together to provide at-risk youth with free academic, art, and athletic programs.  (HOLA Mot. 7; *see also* Compl. ¶ 6 (alleging that HCP and HY are alter egos).)  In pursuit of their mission, they operate the HOLA Performing Arts and Enrichment Center (the "Center"), located at Lafayette Park in Los Angeles, California (the "Premises").  (HOLA Mot. 8.)  The present dispute concerns the construction of the Center.

In September 2017, HOLA entered into a ground lease agreement with the City to lease the Premises from the City for fifty years.  (Compl. ¶¶ 11–12, Ex. A ("Ground Lease"), ECF No. 1-1.)[5]  In the Ground Lease, the parties recited, "HOLA has special

---

[4] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[5] Both SG Blocks and HOLA submit various requests for judicial notice in connection with the Motions.  (RJN iso HOLA Mot., ECF No. 27-2; RJN iso SGB Mot., ECF No. 36; RJN iso Opp'n SGB Mot., ECF No. 40-1.)  Rather than laboring over each individual request and objection thereto, the Court simply notes that it may consider documents properly submitted as part of a complaint or upon which a complaint necessarily relies, if the authenticity of such documents is not contested.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Additionally, the Court may take judicial notice of "fact[s] . . . not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  This includes court filings and other matters of public record, when appropriate.  *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting judicial notice of proceedings in other courts is proper "if those proceedings have a direct relation to matters at issue.").  With these rules in mind, to the extent the Court relies on any such documents or facts, any request to do so is **GRANTED**.  The Court does not take judicial notice of any reasonably disputed facts in the judicially noticed documents.  *Lee*, 250 F.3d at 688–89.  Any request for judicial notice of a document or fact upon which the Court does *not* rely is **DENIED** as moot.

abilities in the areas of fundraising, enrichment, recreation programs, and community outreach for at-risk youth, and [HOLA] desires to construct, operate, and maintain an arts and recreation center that emphasizes community enrichment, recreation programs and activities for the inner-city youth of Los Angeles (the 'Center')."  (Ground Lease ¶ 1.2.3.)  The Ground Lease also "set[s] forth the duties, obligations, responsibilities, aims, and goals of the parties, for the specific purpose of constructing, operating, and maintaining the Center."  (*Id.* ¶ 1.2.4.)

Relevantly, the Ground Lease states, "HOLA shall be required to fund the development, construction, financing, maintenance, and operation of the Center," and "no [City] monies shall be required to fund the development, construction, financing, maintenance, and/or operation of the Center."  (*Id.* ¶ 3.2.)  In consideration for leasing the Premises, HOLA agreed to operate the Center for the community's benefit and to pay the City a nominal rent of one dollar per year.  (*Id.* ¶ 3.1.)  If HOLA stops using the Premises to operate the Center as intended, the Ground Lease may be terminated with the Premises reverting to the City.  (*Id.* ¶ 2.3.)  And, as is typical of such agreements, the Ground Lease states, "Any improvements which have been constructed or erected on the Premises shall, upon termination of [the Ground Lease], become the property of [the City]."  (*Id.* ¶ 16.1.)

In June 2017, while the Ground Lease was being finalized, HOLA contracted SG Blocks to design, fabricate, and construct the Center.[6]  (Compl. ¶ 16, Ex. C ("Construction and Delivery Agreement" or "Agreement").)   The Agreement acknowledges that HOLA had also hired non-party Balfour Beatty Construction, Inc. as a "site contractor who w[ould] be performing site-related work . . . concurrently with [SG Blocks]," and that SG Blocks would need to "fully cooperate with the site contractor while working on the project site."  (Agreement 3; *see* Compl. ¶ 19.)  SG

---

[6] The Center is "a three-story structure comprised of some forty-six (46) repurposed pre-manufactured steel shipping containers, a new walkway/hallway structure separating the container towers, and a new ensemble room."  (FACC ¶ 2.)

Blocks, in turn, subcontracted work to non-party EDI International, PC ("EDI"), as well as to several other subcontractors.  (Compl. ¶¶ 75–76; FACC ¶¶ 4–6.)

Critically, HOLA alleges—and SG Blocks does not contest—that SG Blocks did not hold a valid contractor's license as required under California law.  (*See* FACC ¶ 46.) Nonetheless, SG Blocks maintains the Agreement is severable, so its lack of a license does not preclude recovery of payment for "fabrication and delivery work, which has no such license requirement."  (Compl. ¶¶ 17, 38.)  SG Blocks also emphasizes that HOLA did not hold a contractor's license, either.  (Compl. ¶ 15; SGB Mot. 8, 19–20.)

In any event, HOLA hired SG Blocks as a "Design-Builder" to design, fabricate, and install the structure of the Center.  (*See* HOLA Mot. 9 (citing Agreement 3).) According to HOLA, "SG Blocks failed in all aspects." (HOLA Mot. 7.)  HOLA alleges that SG Blocks provided incomplete design plans, delivered dangerously defective building materials, failed to meet deadlines, and performed defective construction work. (*See* FACC ¶ 9.)  SG Blocks alleges a slightly different story, that its delays were somehow caused by HOLA and HOLA's subcontractors' failure to complete the foundation for the Center as scheduled.  (Compl. ¶¶ 18–22.)  In any event, the parties seem to agree that HOLA eventually terminated the Agreement with SG Blocks and hired Balfour Beatty to complete construction of the Center.  (Compl. ¶ 33; *see* FACC ¶¶ 10(D), 38(B).)  SG Blocks also alleges that HOLA refuses to pay for goods and services rendered in performance of the Agreement.  (Compl. ¶ 34.)

Now, everyone is upset.  SG Blocks filed the Lead Case against HOLA and the City.  (*See* Compl.)  HCP then filed the Consolidated Case against SG Blocks.  (*See* FACC.)  HOLA moves to dismiss SG Blocks's Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (HOLA Mot.)  Having already filed an Answer to SG Blocks's seventh claim, the City moves for judgment on the pleadings as to that claim, pursuant to Rule 12(c).  (City Mot.)  And SG Blocks moves to dismiss HCP's First Amended Consolidated Complaint under Rule 12(b)(6).  (SGB Mot.)

## III.   LEGAL STANDARDS

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Additionally, any party may move for judgment on the pleadings after pleadings are closed, so long as the motion is brought within such time as to not delay the trial. Fed. R. Civ. P. 12(c). Because Rule 12(c) motions and Rule 12(b)(6) motions are "functionally identical," the same standard of review applies to both. *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *accord Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). When ruling on a motion for judgment on the pleadings, "[a]ll allegations of fact by the party opposing the motion are accepted as true" and are construed in the light most favorable to that party. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Judgment on the pleadings is appropriate "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

Under both analyses, the determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in

the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee*, 250 F.3d at 679.  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter a judgment.  *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).  And where a district court dismisses a complaint, it should provide leave to amend if the complaint could be saved by amendment.  *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008); *see also* Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires.").  Reasons to deny leave to amend include "bad faith, undue delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilly Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV.   DISCUSSION

In an effort to keep things organized, the Court addresses each Motion in turn.

## A.   HOLA's Motion to Dismiss Complaint in the Lead Case

In the Lead Case, SG Blocks asserts six claims against HOLA for: (1) breach of contract; (2) conversion; (3) default and judicial foreclosure under the Agreement as a security agreement; (4) misappropriation of trade secrets under California Civil Code section 3426; (5) misappropriation of trade secrets under 18 U.S.C. § 1836; and (6) intentional interference with contractual relations.  (*See* Compl. ¶¶ 36–83.) SG Blocks also asserts a seventh claim against HOLA and the City, for negligently failing to comply with the bond requirements of California Civil Code section 9550. (*Id.* ¶¶ 84–93.)  HOLA moves to dismiss all claims asserted against it, pursuant to Rule 12(b)(6).

### 1.      Breach of Contract (SG Blocks's Claim 1)

First, HOLA contends that Business and Professions Code section 7031(a) bars SG Blocks's breach of contract claim because SG Blocks did not hold a valid contractor's license.  (HOLA Mot. 11–14.)  SG Blocks does not contest that it was unlicensed; rather, it maintains the Agreement is severable and that SG Blocks "is entitled to payment for performance of services which did not require a contractor's license, such as fabrication and delivery." (Opp'n 12 (emphasis omitted).)  In its Reply, HOLA argues that the issue of severability is a red herring, as "SG Blocks did not agree to perform 'non-construction related services.'"  (Reply 8.)  In other words, HOLA contends that the fabrication and delivery work also required SG Blocks to obtain a contractor's license because "the clear purpose of the . . . Agreement is for SG Blocks to provide construction-related services, and only construction-related services, to [HOLA]."  (*Id.*)  The Court agrees with HOLA.[7]

California Business and Professions Code section 7031(a) "protect[s] the public from incompetence and dishonesty in those who provide building and construction services . . . by withholding judicial aid from those who seek compensation for unlicensed contract work."  *Hydrotech Sys., Ltd. v. Oasis Waterpark*, 52 Cal. 3d 988, 995 (1991).  It states:

> [N]o person engaged in the business or acting in the capacity of a contractor, may bring or maintain *any* action, or recover in law *or equity* in any action, . . . for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that they were a duly licensed contractor at all times during the performance of that act or contract *regardless of the merits* of the cause of action brought by the person . . . .

Cal. Bus. & Prof. Code § 7031(a) (emphases added).  Indeed, California deliberately "imposes strict and harsh penalties for a contractor's failure to maintain proper

---

[7] HOLA further argues that (1) SG Blocks admitted in other lawsuits that it is responsible for delays in constructing the Center, and (2) SG Blocks fails to allege the existence of a contract between itself and HY.  (HOLA Mot. 14–16.)  Although these arguments are unconvincing, they are irrelevant in light of the Court's present ruling and need not be addressed.

licensure." *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*, 36 Cal. 4th 412, 418 (2005). "Because of the strength and clarity of this policy, it is well settled that section 7031 applies *despite injustice* to the unlicensed contractor." *Hydrotech*, 52 Cal. 3d at 995 (emphasis added); *see also MW Erectors*, 36 Cal. 4th at 421 ("Section 7031(a) will be applied, regardless of equitable considerations, even when the person for whom the work was performed has taken calculated advantage of the contractor's lack of licensure.").

Conversely, section 7031(a) "does not necessarily preclude the recovery of compensation for acts for which no contractor's license was required." *MKB Mgmt., Inc. v. Melikian*, 184 Cal. App. 4th 796, 806 (2010) (reversing trial court's judgment sustaining demurrer where "[s]ome of the services provided under the [asserted] agreement might have required a contractor's license, but others did not"). Thus, when testing the sufficiency of pleadings against section 7031(a), courts must determine whether the agreement at issue "can reasonably be interpreted to require [the plaintiff] to perform work for which no license was required." *Exec. Landscape Corp. v. San Vicente Country Villas IV Ass'n*, 145 Cal. App. 3d 496, 501 (1983); *see also* Cal. Civ. Code § 3528 ("The law respects form less than substance."). Still, "[u]nlicensed persons may not finesse the statute by drafting contracts calling solely for unlicensed services where in reality other services requiring a license will be performed." *Exec. Landscape*, 145 Cal. App. 3d at 501.

Here, despite SG Blocks's efforts to finesse the statute, section 7031(a) bars its breach of contract claim. SG Blocks alleges it agreed to "fabricate and deliver the modular units to [the Premises] to be incorporated into the structure of the [Center], and to install them onsite." (Compl. ¶ 16.) It further alleges that "[t]he parties' mutual intent at the time . . . was to sever the on-site installation work into a separate contract from the fabrication and delivery work, which has no such license requirement, or to sever, delete, and/or strike the on-site installation work entirely from the [Agreement]." (*Id.* ¶ 17.) But SG Blocks is, in a sense, placing the cart before the horse. The Court

need not reach the issue of severability when the Agreement cannot first be reasonably interpreted to have required SG Blocks to perform work for which no license was required.  *See generally Phx. Mech. Pipeline, Inc. v. Space Expl. Techs. Corp.*, 12 Cal. App. 5th 842, 853 (2017) (referring to severability as "the second question").

As a matter of law, acts such as designing, fabricating, and delivering building materials *in furtherance of a contract to install those materials* cannot be discretely parsed out to avoid section 7031(a)'s license requirement.  *See WSS Indus. Constr., Inc. v. Great W. Contractors, Inc.*, 162 Cal. App. 4th 581, 592–93 (2008) (rejecting plaintiff's attempt to segregate "the discrete tasks of ordering anchor bolts and preparing shop drawings" because they "were performed in furtherance of the scope of the work included in the [contract]"); *cf.* Cal. Bus. & Prof. Code § 7045 ("This chapter does not apply to the sale or installation of any finished products . . . *that do not become a fixed part of the structure*, nor shall it apply to a material supplier . . . *who does not install or contract for the installation* of those items." (emphases added)).  In other words, aspects of construction work cannot be parsed out of section 7031(a)'s licensing requirement where "each aspect of [the contracted] work was integral to the . . . project, and was not minor or incidental," but "part of an integrated whole."  *Banis Rest. Design, Inc. v. Serrano*, 134 Cal. App. 4th 1035, 1045–47 (2005) ("[E]ven if we were to . . . conclude that an otherwise valid portion of a void contract might be severed and maintain its viability, this is not such a case."); *cf. Johnson v. Mattox*, 257 Cal. App. 2d 714, 719 (1968) (precluding recovery for construction work but permitting recovery for the sale of a tractor and mowers because "[t]here is no building or construction activity involved in the furnishing of a tractor and mowers").[8]

In this case, it is clear from the face of the Agreement that SG Blocks's fabrication and delivery of modular shipping containers was integral to the construction

---

[8] This principle extends to design specification work as well.  *See, e.g.*, *Davis Moreno Constr., Inc. v. Frontier Steel Bldgs. Corp.*, No. 1:08-cv-00854-OWW-SMS, 2010 WL 4513388, at *8 (E.D. Cal. Nov. 2, 2010) ("[I]t would be anomalous for California law to permit an entity that is neither a licensed engineer nor a licensed contractor to design structures that the public relies on to be safe.").

of the Center, which SG Blocks was also contracted to complete.  SG Blocks even alleges in the Complaint that it agreed to "fabricate and deliver the modular units to [the Premises] *to be incorporated into the structure of the [Center], and to install them onsite.*"    (Compl. ¶ 16 (emphasis added).)    Despite drawing all inferences in SG Blocks's favor, no reasonable interpretation of the Agreement could render the fabrication and delivery of modular shipping containers—i.e., the literal building blocks comprising the structure that SG Blocks was contracted to construct—as "merely incidental" to construction of the Center.  Thus, as a matter of law, SG Blocks's first claim is barred by section 7031(a), and HOLA's Motion is therefore **GRANTED** as to this claim.  Further, because the Court finds any amendment would be futile, this claim is **DISMISSED with prejudice**.  *See Manzarek*, 519 F.3d at 1031.

### 2. Conversion, Misappropriation of Trade Secrets, & Negligence (SG Blocks's Claims 2, 4, 5, 7)

Next, the Court turns to SG Blocks's tort claims against HOLA for conversion, misappropriation of trade secrets, and negligence.  (*See* Compl. ¶¶ 46–52, 60–73, 84–93.)  HOLA contends these claims are barred by the economic loss rule, which prohibits a plaintiff from "tortifying" an otherwise precluded breach of contract claim.  (HOLA Mot. 16–17.)  SG Blocks protests application of the rule here because it has "alleged that HOLA breached several duties independent of the contractual relationship between them."  (*See* Opp'n HOLA Mot. 19–21.)  But SG Blocks cannot circumvent the economic loss rule simply by identifying alternative *grounds* for the relief it seeks.

"The economic loss rule requires a [plaintiff] to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate *harm* above and beyond a broken contractual promise."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (emphasis added) ("Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other." (internal quotation marks and brackets omitted)); *accord ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 970 (C.D. Cal. 2017) (holding economic loss rule

applicable where "[plaintiff's] injury is simply economic harm resulting from the contract—namely, that [defendant] owes it money that [defendant] will not pay").

Here, SG Blocks's claims for conversion, misappropriation of trade secrets, and negligence (against HOLA) are barred by the economic loss rule because each claim seeks relief for the same economic *harm* resulting from the alleged breach of the Agreement—namely, that HOLA kept and installed the modular shipping containers without paying SG Blocks.  For instance, with its conversion claim, SG Blocks alleges HOLA converted "sustainable building systems and structures created through . . . modification of cargo shipping containers" when it "failed and refused" to return the materials to SG Blocks.  (Compl. ¶¶ 47, 50.)  Similarly, the "trade secrets" HOLA allegedly misappropriated "consisted of methods, techniques, and processes for the . . . modification of . . . shipping containers into modular building components, including devices, methods, techniques, and/or processes for installing those modular building components . . . ."  (*Id.* ¶¶ 62, 69.)  And as for its negligence claim, SG Blocks alleges that HOLA's negligent failure to post a payment bond "deprive[d] SG Blocks of the ability to seek recovery from the payment bond . . . [such] that SG Blocks has been unable to recover all amounts due under the [Agreement]."  (*Id.* ¶ 91.)

Plainly, SG Blocks's conversion, misappropriation, and negligence claims against HOLA seek redress via tort law for the same harm alleged in SG Blocks's breach of contract claim—namely, compensation for goods or services provided under the Agreement.  Thus, those claims are barred by the economic loss rule, and the Court finds that no amendment could cure this deficiency.  *See Manzarek*, 519 F.3d at 1031. HOLA's Motion is therefore **GRANTED** as to these claims against HOLA, which are **DISMISSED with prejudice**.

### 3.  *Default & Foreclosure on Security Agreement (SG Blocks's Claim 3)*

Turning back to the Complaint's third claim, SG Blocks alleges the Agreement impliedly "contains a security agreement," under which "SG Blocks agreed to fabricate, sell, and deliver to HOLA [modular shipping containers for constructing the Center],

1   and HOLA agreed to repay SG Blocks therefor at certain times and places as stated in

2   the agreement." (Compl. ¶ 55.)  HOLA moves to dismiss this claim on grounds that

3   (1) "[n]othing in the . . . Agreement creates a lien," and (2) regardless, the claim is

4   barred by California Business and Professions Code section 7031(c), which prohibits

5   unlicensed contractors from enforcing security interests taken to secure compensation

6   for contracting work. (HOLA Mot. 18–19.)  In opposition, SG Blocks argues only that

7   a security agreement need not be express.  (Opp'n HOLA Mot. 23–25.)

8       SG Blocks's claim for default and foreclosure of an alleged security agreement

9   must be dismissed.  For starters, the Court tends to agree with HOLA that the Agreement

10   does not appear to create any security interest.  (*See* HOLA Mot. 18 ("SG Blocks fails

11   to point to any specific provision in the . . . Agreement that provides it with a security

12   interest, because none exists.").)  Regardless, the Court need not dwell on the matter

13   because HOLA is also correct that section 7031(c) bars this claim.  Similar to its already

14   discussed counterpart (section 7031(a)), section 7031(c) states:

15
16   A security interest taken to secure any payment for the performance of any
     act or contract for which a license is required by this chapter is
17   *unenforceable if the person performing the act or contract was not a duly*
     *licensed contractor* at all times during the performance of the act or
18   contract.

19   Cal. Bus. & Prof. Code § 7031(c); *see In re Yurdumyan*, No. 1:17-bk-12333-MT,

20   2018 WL 4042817, at *9 (Bankr. C.D. Cal. Aug. 23, 2018) (applying section 7031(c)

21   against deed of trust to secure payment for work, where contractor was not licensed).

22       SG Blocks does not address section 7031(c) in its Opposition.  (*See* Opp'n HOLA

23   Mot. 23–25 (arguing only that a security interest need not be expressly created).)  But

24   even if the Court liberally construed SG Blocks's arguments regarding

25   section 7031(a)'s license requirement as extending to the present issue of

26   section 7031(c)'s license requirement, the outcome would not change.  As already

27   discussed, SG Blocks's performance under the Agreement required a valid contractor's

28   license, which SG Blocks did not possess.  (*See supra* Part IV(A)(1)).    Thus,

section 7031(c) bars SG Blocks's third claim against HOLA.  Further, no amendment could cure this deficiency.  *See Manzarek*, 519 F.3d at 1031.  HOLA's Motion is therefore **GRANTED** as to this claim, which is **DISMISSED with prejudice**.

### 4. *Intentional Interference with Contractual Relations (SG Blocks's Claim 6)*

With its only other claim against HOLA, SG Blocks alleges it subcontracted EDI to provide "architectural and design services, including design schematics, draft construction documents, and construction administration for the design and construction of the [Center]" (the "EDI Subcontract").  (Compl. ¶ 75.)  SG Blocks further alleges it entered into "multiple agreements with sub-tier subcontractors and suppliers to furnish labor, materials, equipment, and/or supplies for the [Center]" (the "Other Subcontracts").  (*Id.* ¶ 76.)[9]  Ultimately, the crux of this claim is that HOLA intentionally prevented and/or hindered performance of the EDI Subcontract and certain Other Subcontracts by "communicating with, negotiating with, and contracting with EDI and certain sub-tier subcontractors and suppliers without SG Blocks's knowledge or consent, and to the detriment of SG Blocks."  (*Id.* ¶ 79.)

HOLA moves to dismiss this claim on grounds that (1) section 7031(a) bars the claim; and (2) HOLA cannot be liable for this tort because it is not a "stranger" to the subcontracts.  (HOLA Mot. 20.)  SG Blocks opposes, arguing that (1) section 7031(a) does not apply because the damages sought via this claim "are not for the collection of compensation for the performance of the [Agreement]"; and (2) (1) HOLA can be sued for this tort because it *is* a stranger to the subcontracts.  (Opp'n HOLA Mot. 17, 26–28.)  This time, SG Blocks is correct.

The Court starts by stating the obvious, that section 7031(a) does not bar this claim.  Section 7031(a) prevents contractors from seeking compensation for performing unlicensed contractor work.  SG Blocks's interference claim does not seek payment for

---

[9] Although, SG Blocks also alleges that it cannot identify *which* of the Other Subcontracts were allegedly interfered with.  (Compl. ¶ 78.)

1    work performed under the Agreement.  Indeed, unlike SG Blocks's other tort claims

2    which are barred by the economic loss doctrine, (*see supra* Part IV(A)(2)), this

3    interference claim alleges a harm above and beyond unpaid compensation for a breach

4    of the Agreement.  Section 7031(a) is inapplicable.

5           Thus, the Court turns to the other issue raised, which is HOLA's status as a

6    "stranger" to the subcontracts.  HOLA argues, "[w]hen a contract contemplates the

7    performance or involvement of a non-contracting party, that party cannot be liable for

8    interfering with the contract."  (HOLA Mot. 20 (citing *PM Grp., Inc. v. Stewart*,

9    154 Cal. App. 4th 55, 65 (2007)).  In other words, HOLA contends it cannot be held

10   liable for interfering with the subcontracts simply because those subcontracts

11   "contemplated HOLA's participation and performance by, among other things,

12   allowing access to the Project site and accepting and approving the services and labor."

13   (*Id.*; *see also* Reply HOLA Mot. 12–13.)  But as SG Blocks correctly argues, this is an

14   incomplete statement of law.

15          Generally speaking, "California recognizes a cause of action against

16   *noncontracting parties* who interfere with the performance of a contract."  *Applied*

17   *Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 513 (1994).  Stated otherwise,

18   "[i]t has long been held that *a stranger to a contract* may be liable in tort for

19   intentionally interfering with the performance of the contract."  *Id.* (quoting *Pac. Gas*

20   *& Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

21          Conversely, "the tort cause of action for interference with contract does not lie

22   against a party to the contract."  *Id.* (collecting cases).  In *PM Group*, the case upon

23   which HOLA relies, the California Court of Appeal reiterated this principle and held

24   that "by extension, a contracting party could not be held liable for interfering with the

25   performance of subcontracts *if that claim hinged on the defendant's failure to perform*

26   *on the original contract*."  *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*,

27   766 F.3d 1002, 1008 (9th Cir. 2014) [hereinafter *UNMI*] (emphasis added) (discussing

28   *PM Grp.*, 154 Cal. App. 4th at 65).  Translating this rule to the construction context, a

hirer might be immune from suit for interference with a subcontract *if* (1) the subcontract contemplates some performance by the hirer, *and* (2) the claim presently asserted against the hirer hinges on the hirer's failure to perform as contemplated in the subcontract.  *Cf. id.* (distinguishing *PM Group* to clarify that a defendant may be sued for contract interference where the "theory of liability . . . is *not* based on [defendant]'s failure to perform [as contemplated in the subcontract]" (emphasis added)).

Here, the rule from *PM Group*—that a contracting party cannot be liable for interfering with its own subcontracts—does not apply.  SG Blocks does not allege that HOLA failed to perform under the Agreement, in a manner contemplated by the subcontracts.  *See id.*; (Opp'n HOLA Mot. 27.)  Dismissal on this basis would be unprecedented and too far removed from the underlying principle that a party to a contract cannot interfere with its own contract.  *See UNMI*, 766 F.3d at 1008.  Moreover, to the extent HOLA seeks immunity simply because it has some economic interest in the subcontracts, the Ninth Circuit has already fully explained why that argument falls flat.  *See id.* at 1007 ("To shield parties with an economic interest in the contract from potential liability would create an undesirable lacuna in the law between the respective domains of tort and contract . . . as it is those parties with some type of economic interest in a contract whom would have the greatest incentive to interfere with it.").  Thus, the Court concludes that HOLA fails to raise any valid grounds for dismissing SG Blocks's sixth claim for intentional interference with contractual relations.  Accordingly, HOLA's Motion is **DENIED** as to this claim.

In total, HOLA's Motion to Dismiss SG Blocks's Complaint is **GRANTED in part** and **DENIED in part**.  HOLA's request to dismiss SG Blocks's sixth claim for intentional interference with contractual relations is **DENIED**.  The remainder of SG Blocks's claims are **DISMISSED with prejudice**.  The Court now moves on to the two remaining Motions.

**B.** **City's Motion for Judgment on the Pleadings on SG Blocks's Seventh Claim in Lead Case**

In the Lead Case, SG Blocks asserts only one claim against the City, for negligently failing to ensure that HOLA posted a payment bond for construction of the Center.  (*See* Compl. ¶¶ 84–93 (invoking Cal. Civ. Code § 9550(a)).)  Rather than moving to dismiss the claim, the City filed an Answer and subsequently moved for judgment on the pleadings.[10]  (*See* City Mot.)

California Civil Code section 9550 provides, "A direct contractor that is awarded a public works contract involving an expenditure in excess of twenty-five thousand dollars ($25,000) shall, before commencement of work, give a payment bond to and approved by the officer or public entity by whom the contract was awarded."  Cal. Civ. Code § 9550(a); *see also Elec. Elec. Control, Inc. v. L.A. Unified School Dist.*, 126 Cal. App. 4th 601, 610–11 (2005).  Here, the parties dispute whether such a payment bond was required in the case of the Ground Lease.

The City contends no bond was required because (1) the Ground Lease is a ground lease, not a public works contract; and (2) the Ground Lease did not involve the expenditure of public funds.  (City Mot. 3–4.)  In opposition, SG Blocks argues that "the [City] blatantly ignores that SG Blocks has specifically alleged the existence of a public works contract and imposition of the statutory duty under section 9550."  (Opp'n City Mot. 4–5 (citing Compl. ¶ 85)).  SG Blocks further argues that "payment on a public works contract may be in the form of the contracting party's 'use of public land.'"

---

[10] HOLA has not yet filed an answer in the Lead Case.  Normally, because Rule 12(c) authorizes filing a motion for judgment on the pleadings *after the pleadings have closed*, "a Rule 12(c) motion must await the answers of all defendants."  *Alles v. Wells Fargo Bank, NA*, No. ED 12-02095-MWF (DTBx), 2013 WL 12142561, at *2 (C.D. Cal. Apr. 25, 2013).  Thus, the City's Motion is arguably premature.  However, "courts have exercised their discretion to permit a motion on the pleadings before all defendants have filed an answer where no prejudice to any party would result."  *Rodriguez v. L.A. Cnty. Sheriff's Dep't*, No. SACV 13-681 AG (PLAx), 2014 WL 12696918, at *2 (C.D. Cal. May 16, 2014).  Here, SG Blocks does not object to the City's Motion as having been filed prematurely, and there is no indication that SG Blocks would be prejudiced by considering the City's Motion now.  Because the pleadings are effectively "closed" as to the City, the City's Motion can proceed.

(*Id.* 6 (quoting *Boydston v. Napa Sanitation Dist.*, 222 Cal. App. 3d 1362, 1368 (1990))).  However, SG Blocks's arguments are unpersuasive.

The parties primarily dispute whether the Ground Lease is a "public works contract."  (*See* City Mot. 3–4; Opp'n City Mot. 4–6.)  The Court need not presently consider whether the Ground Lease constitutes a public works contract, however, because even if it were, section 9550 would not apply.  As the City notes, "there is . . . nothing in the Ground Lease to suggest an expenditure by the City in excess of $25,000, or of any sum at all."  (City Mot. 3 n.3.)  Indeed, the Ground Lease states, among other things, that "no [City] monies shall be required to fund the development, construction, financing, maintenance, and/or operation of the Center."  (Ground Lease ¶ 3.2.)  Section 9550 requires a payment bond for "public works contract[s] *involving an expenditure in excess of twenty-five thousand dollars*."  Cal. Civ. Code § 9550(a) (emphasis added).  Here, such an expenditure did not occur.  Therefore, SG Blocks's negligence claim, based on an alleged violation of section 9550, fails.

SG Blocks's reliance on *Boydston* does not change this conclusion.  In *Boydston*, a municipal sanitation district needed to dispose of sewage waste.  222 Cal. App. 3d at 1365.  To that end, the district advertised an opportunity to use district land and reclaimed water from the sewage plant for irrigation, in exchange for disposing of the waste.  *Id.*  Multiple contractors submitted bids, and the question in that case was whether the sanitation district should have been required to follow statutory bidding rules in selecting the winner.  *Id.*[11]  There, the court held the competitive bidding rule was enforceable, largely because "[t]he primary purpose of the agreement [wa]s to dispose of the sludge and reclaimed water in a utilitarian fashion *which, absent the agreement, [the district] would otherwise perform itself*."  *Id.* at 1366–68 (emphasis added) (noting the purpose underlying competitive bidding requirements is to provide

---

[11] The competitive bidding requirement at issue in *Boydston* came from California Public Contract Code section 20783, which calls for competitive bidding "[w]hen work is done by [a sanitation] district itself by force account . . . [and] the expenditure required for the work exceeds thirty-five thousand dollars."  Cal. Pub. Cont. Code § 20783; *see Boydston*, 222 Cal. App. 3d at 1365.

1    "assurance that the taxpayers receive the most for their money and that awards are made
2    without favoritism, fraud or corruption").

3           Here, unlike in *Boydston*, nothing suggests that construction of the Center was a
4    utilitarian function that the City would have performed itself in the absence of the
5    Ground Lease.  (*See* Reply City Mot. 3.)  Moreover, a competitive bidding requirement
6    as discussed in *Boydston* serves an entirely different purpose than the payment bond
7    requirement at issue here.  *See Crosno Constr., Inc. v. Travelers Cas. & Sur. Co. of Am.*,
8    47 Cal. App 5th 940, 961 (2020) ("The purpose behind the public works payment bond
9    is to provide subcontractors . . . a quick, reliable and sufficient means of payment."
10   (internal quotation marks omitted)).  Thus, the Court does not find *Boydston* applicable
11   to the present case.

12          In short, the City was not obligated to ensure the posting of a payment bond in
13   connection with the Ground Lease because it did not expend more than $25,000.  *See*
14   Cal. Civ. Code § 9550(a).  SG Blocks cannot overcome this hurdle simply by alleging
15   that a bond was required.[12]  Furthermore, as the underlying facts are not disputed, the
16   Court finds that any amendment would be futile.[13]  The City's Motion is therefore
17   **GRANTED**.  SG Blocks's sole claim against the City is **DISMISSED with prejudice**.

18

19
20   [12] Courts "are not required to accept as true conclusory allegations which are contradicted by
     documents referred to in the complaint."  *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139
21   (9th Cir. 2003) ("[Courts do not . . . necessarily assume the truth of legal conclusions merely because
     they are cast in the form of factual allegations.").  "If a complaint is accompanied by attached
22   documents, . . . [t]hese documents are part of the complaint and may be considered in determining
     whether the plaintiff can prove any set of facts in support of the claim."  *McVey v. McVey*, 26 F. Supp.
23   3d 980, 983 (C.D. Cal. 2014) (quoting *Durning v. First Bos. Corp.*, 815 F.2d 1265, 1267 (9th Cir.
     1987)).  Here, the Court may consider the Ground Lease because SG Blocks attached it to the
24   Complaint as Exhibit A.  (*See* Ground Lease); *see also Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d
     924, 925–26 (9th Cir. 2003) ("Under California law, the interpretation of contract language is a
25   question of law.").
     [13] The Court also observes that what SG Blocks seeks to recover from the City is, ultimately, the
26   equivalent of compensation for the work it performed for HOLA.  Even if HOLA had been required
27   to post a payment bond, the Court is skeptical that this claim against the City would not be barred by
     Business and Professions Code section 7031 and/or the economic loss doctrine, for the same reasons
28   discussed, *supra*.

**C.     SG Blocks's Motion to Dismiss HCP's FACC**

Finally, the Court turns to the claims in the Consolidated Case.  HCP filed the FACC against SG Blocks and one thousand unnamed Doe Defendants, asserting seven claims for: (1) negligence; (2) strict products liability; (3) strict products liability (asserted against only Doe Defendants 1–200); (4) breach of contract based on the Agreement; (5) breach of express warranty; (6) violation of Business and Professions Code § 7031(b); and (7) violation of California's unfair competition law, Business and Professions Code section 17200 ("UCL").  (*See* FACC.)

SG Blocks moves to dismiss all claims asserted against it, based on the following three arguments.  (*See* SGB Mot.)  First, SG Blocks argues that all claims against it must be dismissed because the license requirement of section 7031(a) also applies to HCP, who did not have a contractor's license either.  (*Id.* at 15–24.)  Second, SG Blocks alternatively argues that all claims against it must be dismissed because the Ground Lease is "illegal and void" as it is a public works contract that was secured without a competitive bidding process.  (*Id.* at 25–29.)  Third, SG Blocks argues that HCP's sixth claim is barred by a one-year statute of limitations.  (*Id.* at 29–30.)  The Court addresses these three arguments in turn.

**1.     *HCP's Lack of a Contractor's License***

First, SG Blocks argues that HCP's claims are barred by section 7031(a) because HCP did not possess a contractor's license and the Ground Lease contemplates that HCP "shall design and construct the Center."  (*Id.* at 15–18 (quoting Ground Lease ¶ 13.3).)  HCP disputes that it did any contracting work but argues that even if it did, it is exempt from the licensing requirement under the owner-builder exemption of Business and Professions Code section 7044.  (Opp'n SGB Mot. 10–12.)

Business and Professions Code section 7026 "plainly states that both the person who provides construction services himself and one who does so 'through others' qualifies as a 'contractor.'"  *Vallejo Dev. Co. v. Beck Dev. Co.*, 24 Cal. App. 4th 929, 941 (1994).  Here, it appears HOLA undertook several obligations under the Ground

Lease, including the obligation to have the Center constructed.  (Ground Lease ¶ 13.3.)  Thus, it seems that HOLA may have been a "contractor" under the Ground Lease, at least in some respects.  However, this is irrelevant.  Even if HOLA was an unlicensed contractor, section 7031(a) does not bar its claims against SG Blocks because it was HOLA who hired SG Blocks to perform contracting work, not the other way around.

"The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services." *Hydrotech*, 52 Cal. 3d at 995 (citing *Lewis & Queen v. N. M. Ball Sons*, 48 Cal. 2d 141, 149–50 (1957)).  "The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay." *Id.*  Thus, section 7031(a) "shields *persons who utilize the services of an unlicensed contractor* from lawsuits by that contractor to collect payment for unlicensed work." *White v. Cridlebaugh*, 178 Cal. App. 4th 506, 518 (2009) (emphasis added); *accord Alatriste v. Cesar's Exterior Designs, Inc.*, 183 Cal. App. 4th 656, 664 (2010) ("The *hiring party* is entitled to enforce these remedies through a defensive 'shield' . . . ." (emphasis added)).  In other words, when someone hires a contractor to perform contracting work, section 7031(a) serves as a potential shield for the *hirer*, not the contractor.

Here, SG Blocks did not hire HCP to perform any work at all.  The Court need not consider whether the owner-builder exception to the licensing requirement applies; section 7031(a) does not bar HCP's claims against SG Blocks in the first instance.  *See generally In re MC2 Cap. Partners, LLC*, No. 11-14366, 2014 WL 7403853, at *1 (Bankr. N.D. Cal. Dec. 29, 2014) ("[The hirer] was never licensed under California contractors license laws, but that is of no consequence.  [The owner-builder exemption in] California Business and Professions Code § 7044(a)(2) . . . is inapplicable.").  Thus, to the extent SG Blocks moves to dismiss HCP's claims on this basis, its Motion is **DENIED**.

### 2.      Competitive Bidding

Next, SG Blocks argues the FACC must be dismissed because the City failed to comply with the competitive bidding requirement set forth in California Public Contract Code section 20162.  (SGB Mot. 25–29.)  That code section states, "When the expenditure required for a public project exceeds five thousand dollars ($5,000), it shall be contracted for and let to the lowest responsible bidder after notice."  Cal. Pub. Cont. Code § 20162.  Essentially, SG Blocks contends that the Ground Lease between the City and HOLA is an illegal contract because there was no competitive bidding process, and HCP's claims must therefore fail because they rely on the illegal contract.  (SGB Mot. 25–29.)

In opposition, HCP argues that (1) "[t]he City is not required to solicit bids when leasing land to a nonprofit entity for the benefit of the community"; (2) "the purpose of the Ground Lease is not for the construction of the [Center]"; (3) "a competitive bidding requirement is not absolute"; and (4) "SG Blocks also lacks standing to challenge or move to set-aside the Ground Lease" because SG Blocks was not an unsuccessful bidder.  (Opp'n SGB Mot. 14–16.)

To begin, the Court credits SG Blocks's argument that "an agreement can have more than one purpose and impose multiple obligations—such as to lease a property *and* to construct a building upon it."  (Reply SGB Mot. 14.)  Indeed, as already mentioned, it seems clear enough from the Ground Lease that HOLA agreed to design and construct the Center, even if the parties always intended for HOLA to accomplish this by hiring builders.  Thus, it appears the Ground Lease concerned, at least in some ways, a "public project."  *See* Cal. Pub. Cont. Code § 20161 (defining "public project" as, among other things, "[a] project for the erection, improvement, painting, or repair of public buildings and works").  However, that is where SG Blocks's arguments lose steam.

As the Court has already acknowledged more than once, the Ground Lease did not involve an expenditure of City monies.  (*See* Ground Lease ¶ 3.2.)  Because the

competitive bidding requirement of Public Contract Code section 20162 applies only to public projects when expenditures exceed $5,000, the competitive bidding requirement invoked by SG Blocks is inapplicable here.

Moreover, HCP correctly notes that competitive bidding requirements are not absolute.   Rather, a "competitive bid requirement is to be construed fairly and reasonably with sole reference to the public interest and in light of the purposes to be accomplished."  *Graydon v. Pasadena Redevelopment Agency*, 104 Cal. App. 3d 631, 636 (1980).   Thus, competitive bidding is not necessary where it appears that "competitive bidding would be incongruous or would not result in any advantage to the public entity in efforts to contract for the greatest public benefit."  *Id.* (collecting cases). Here, the Ground Lease expressly highlights HOLA's "special abilities in the areas of fundraising, enrichment, recreation programs, and community outreach for at-risk youth." (Ground Lease ¶ 1.2.3.)  Further, it appears the primary purpose of the Ground Lease was to enable HOLA to exercise its "special abilities" after funding and overseeing the construction of the Center.  (*See id.* ¶ 1.2.4 (reciting that the parties "desire[d] to enter into th[e] Lease for the use of certain land . . . for the specific purpose of constructing, operating, and maintaining the Center").)  To the extent section 20162 might have otherwise applied to the Ground Lease, the Court finds that competitive bidding would not have resulted in any advantage to the City in its efforts to maximize the benefit to the public.  *See Graydon*, 104 Cal. App. 3d at 636.

For these reasons, the Court concludes that SG Blocks fails to establish that the Ground Lease is void for lack of a competitive bidding process.  Thus, to the extent SG Blocks moves to dismiss HCP's claims on this basis, its Motion is **DENIED**.

### 3. *Statute of Limitations on Section 7031(b)*

Finally, SG Blocks argues that HCP's sixth claim, for disgorgement under Business and Professions Code section 7031(b), is barred by the applicable one-year statute of limitations.   Specifically, SG Blocks avers that HCP terminated SG Blocks

from the project on February 20, 2019, and HCP did not commence its action against SG Blocks until April 20, 2020.  (SGB Mot. 30 (citing Compl. ¶ 33).)

HCP counters that SG Blocks may not assert this affirmative defense because HCP was careful to omit from its FACC *when* it terminated SG Blocks.  (Opp'n SGB Mot. 18–19.)  Although omitting key facts from a complaint does not entirely prevent a defendant from asserting a statute of limitations defense, and although the Court is suspicious that this claim is actually time-barred, HCP is ultimately correct that the Court cannot presently find that HCP terminated SG Blocks on February 20, 2019.

The statute of limitations for claims brought under section 7031(b) is one year. *Eisenberg Vill. of L.A. Jewish Home for the Aging v. Suffolk Constr. Co.*, 53 Cal. App. 5th 1201, 1203 (2020).  Furthermore, for such claims, "the discovery rule does not apply, and . . . a section 7031(b) claim accrues upon the completion or cessation of the performance of the act or contract at issue." *Id.* at 1203, 1213 ("In light of the equitable basis for the discovery rule, it makes little sense to apply the rule to claims for disgorgement under section 7031(b).").

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted *only* if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (emphasis added).  An exception to this rule is that "[i]f the defense does not appear on the face of the complaint and the trial court is willing to accept matters outside of the pleadings, the defense can still be raised by a motion to dismiss accompanied by affidavits." *Id.*  Further, "[i]f the defense is not apparent on the face of the complaint and the motion to dismiss is not accompanied by acceptable affidavits, an appropriate summary judgment motion may be employed." *Id.*

Here, if it is true that HCP terminated SG Blocks from the project on February 20, 2019, then this claim is time-barred. *See Eisenberg*, 53 Cal. App. 5th at 1203.  However, SG Blocks fails to establish a basis upon which the Court may properly find the statute of limitations has run.  To begin, SG Blocks does not dispute that the statute of

1   limitations defense is not apparent on the face of the FACC, as HCP does not allege

2   when it terminated SG Blocks. (*See generally* SGB Mot. 29–30.) The Court also notes

3   that SG Blocks's Motion to Dismiss is not accompanied by any affidavit attesting to

4   when HCP terminated SG Blocks from the project. Thus, there is no basis upon which

5   to treat SG Blocks's Motion as one for summary judgment under *Jablon*.

6          Rather than filing affidavits to establish the date of its termination, SG Blocks

7   requests the Court take judicial notice of the "fact" that SG Blocks was terminated on

8   February 20, 2019. (RJN iso SGB Mot. 3–4.) SG Blocks bases its requests on (1) the

9   allegations in paragraph 33 of its own Complaint in the Lead Case, and (2) a supposed

10  "admission" in HOLA's Motion to Dismiss the Complaint in the Lead Case. (*Id.*; SGB

11  Mot. 29–30.) SG Blocks contends these references are sufficient to establish this fact

12  because "[t]he Court may take judicial notice of the documents filed in this action and

13  made a part of the record in this case." (RJN iso SGB Mot 6.)

14         However, SG Blocks's request for judicial notice of this fact cannot be granted.

15  First, the documents upon which SG Blocks attempts to rely are not of record in "this

16  case" (i.e., the Consolidated Case), as the Lead Case and the Consolidated Case remain

17  two separate actions. *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–97 (1933)

18  ("Consolidation . . . does not merge [separate] suits into a single cause, or change the

19  rights of the parties, or make those who are parties in one suit parties in another.").

20  Second, the Court agrees with HCP that SG Blocks mischaracterizes the statement made

21  in HOLA's Motion, which does not admit any termination date. (*See* Opp'n SGB

22  Mot. 18–19; *see also* HOLA Mot. 10 n.1 (disputing only whether termination was "for

23  convenience" or "for cause due to . . . delays and defects caused by SG Blocks"). Thus,

24  SG Blocks fails to provide any appropriate basis for judicially noticing the fact it was

25  terminated on February 20, 2019.[14]

26

27

28  _____

[14] Moreover, even if the Court judicially noticed the Complaint and HOLA Motion, the Court would not take judicial notice of reasonably disputed facts within those documents. (*See supra* note 5 (citing *Lee*, 250 F.3d at 688–89).)

In short, the Court cannot presently conclude that HCP's section 7031(b) claim is time-barred because the Court cannot properly rely on the fact that SG Blocks may have been terminated more than a year before HCP commenced its action. Thus, to the extent SG Blocks moves to dismiss this claim on that basis, SG Blocks's Motion is **DENIED**. Still, SG Blocks remains free to assert a viable statute of limitations defense under procedurally proper circumstances moving forward. Today's decision does not reach whether HCP's section 7031(b) claim is actually precluded by the statute of limitations, nor does it necessarily impact SG Blocks's recently filed motion for sanctions against HCP, which remains pending. (*See* Mot. Sanctions, ECF No. 65 (contending that HCP continues to maintain a claim it knows is frivolous given the statute of limitations).) It simply is the case that SG Blocks has not provided adequate grounds for dismissal of this claim at this pleading stage.

## V.   CONCLUSION

In summary, the Court holds as follows:

1) In the Lead Case, HOLA's Motion to Dismiss the Complaint is **GRANTED in part** and **DENIED in part**. (ECF No. 27.) SG Blocks's first, second, third, fourth, fifth, and seventh claims against HOLA are **DISMISSED with prejudice**. SG Blocks's sixth claim against HOLA remains.

2) In the Lead Case, the City's Motion for Judgment on the Pleadings (ECF No. 32) is **GRANTED**. SG Blocks's sole claim against the City (claim seven) is **DISMISSED with prejudice**.

3) In the Consolidated Case, SG Blocks's Motion to Dismiss the FACC (ECF No. 35) is **DENIED**.

**IT IS SO ORDERED.**

February 25, 2021

OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE